UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TRACI M FRANKLIN,<br>WILLIAM FRANKLIN,<br><br>       Plaintiffs,<br><br>       v.<br><br>RANDOLPH COUNTY COMMISSIONERS,<br>RANDOLPH COUNTY SHERIFF,<br>WINCHESTER POLICE DEPARTMENT,<br>RANDOLPH COUNTY SHERIFF<br>DEPARTMENT,<br>CITY OF WINCHESTER, IN,<br>JERRY HAMMONS Deputy Sheriff, Randolph<br>County Sheriff Department,<br>AUSTIN HIGHLEN Patrolman, Winchester<br>Police Department,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. 1:18-cv-01340-JMS-DML |

## ORDER

Plaintiff Traci Franklin was arrested in Winchester, Indiana in 2016. Ms. Franklin and her husband, William, brought suit against Winchester Police Department patrolman Austin Highlen, the City of Winchester, Randolph County Sheriff's Deputy Jerry Hammons, the Randolph County Commissioners, and the Randolph County Sherriff's Department, alleging a host of claims arising out of Ms. Franklin's arrest.

Two Motions are currently pending. The first is a Motion for Summary Judgment filed by the city of Winchester and Officer Highlen, (collectively, the "Winchester Defendants"), [Filing No. 51], and the second is a Motion to Dismiss/Motion for Summary Judgment filed by the Randolph County Commissioners, the Randolph County Sheriff Department, and Deputy Hammons, (collectively, the "Randolph County Defendants"), [Filing No. 59]. For the reasons

described herein, the Court **GRANTS** the Winchester Defendants' Motion, **GRANTS IN PART** the Randolph County Defendants' Motion, and **REMANDS** the remaining claims to the Randolph Circuit Court.

# I.
## LEGAL STANDARD

Although the Randolph County Defendants styled their Motion as a "Motion to Dismiss/Motion for Summary Judgment," [Filing No. 59 at 1], given the parties' reliance on matters outside of the pleadings, the Court will construe the Randolph County Defendants' Motion as a Motion for Summary Judgment.

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the

suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative. *Montgomery v. Am. Airlines Inc*., 626 F.3d 382, 389 (7th Cir. 2010). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The following factual background is set forth pursuant to the standards detailed in Part I. The facts stated are not necessarily objectively true, but, as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable

to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

In the early months of 2016, Traci Franklin was working as a licensed professional nurse at a long-term care center in Richmond, Indiana. [Filing No. 52-1 at 5.] At the time, she was living with her husband, William, in a home they owned in Winchester, Indiana. [Filing No. 52-1 at 10.]

On April 9, 2016, Ms. Franklin went to work at 2:00 p.m. and was scheduled to work until 10:00 p.m. [Filing No. 52-1 at 11.] When another employee did not come into work, Ms. Franklin worked until 11:30 p.m., or slightly later. [Filing No. 52-1 at 11.] When she left work, it was snowing, and visibility was poor. [Filing No. 52-1 at 11.] At some point during her drive home, Ms. Franklin was run off the road by a large truck, which upset her. [Filing No. 52-1 at 13.] As Ms. Franklin was driving into Winchester, she came to a stop sign and did not come to a complete stop due to the slick road. [Filing No. 52-1 at 12.]

Shortly after driving through the stop sign, Ms. Franklin turned left into the driveway of her house, and, as she did so, she noticed police lights behind her. [Filing No. 52-1 at 12.] Deputy Jerry Hammons then approached Ms. Franklin's car and asked Ms. Franklin if she knew why he was there. [Filing No. 52-1 at 12.] He explained that she did not come to a complete stop at the stop sign. [Filing No. 52-1 at 12.] Deputy Hammons then used a flashlight to look through the windows of Ms. Franklin's car. [Filing No. 52-1 at 13.] Ms. Franklin was unable to produce her driver's license or car registration when Deputy Hammons requested them. [Filing No. 52-1 at 13.]

Deputy Hammons then went to his squad car and returned to Ms. Franklin's car with a ticket. [Filing No. 52-1 at 14.] By this point, one or more other officers had arrived on the scene,

including Officer Austin Highlen. [Filing No. 52-1 at 14.] Ms. Franklin took the ticket from Deputy Hammons and said "with a little bit of an attitude," "Okay. I've got it. I'll take care of it." [Filing No. 52-1 at 14.] Deputy Hammons then said, "You're coming with me. You're under arrest." [Filing No. 52-1 at 14.] Ms. Franklin asked why she was under arrest. [Filing No. 52-1 at 14.]

At some point, Deputy Hammons instructed Ms. Franklin to get out of her car and she opened her car door. [Filing No. 52-1 at 16.] As she struggled to get out of the car, Deputy Hammons grabbed her arm and stretched it back against her car aggressively. [Filing No. 52-1 at 16.] Deputy Hammons told Officer Highlen to "tase her," and then repeated the instruction four times. [Filing No. 52-1 at 14; Filing No. 52-1 at 16.] Officer Highlen refused and did not tase Ms. Franklin. [Filing No. 52-1 at 15.] Around the time Officer Highlen "stepped in," Ms. Franklin put her feet up and hit either Deputy Hammons or Officer Highlen or both with her feet or legs. [Filing No. 52-1 at 16.]

Ms. Franklin requested that a woman search her. [Filing No. 52-1 at 17.] Instead, Deputy Hammons put his hands on Ms. Franklin, around the front of her and around the back and said that he was an officer and could touch her wherever he wanted. [Filing No. 52-1 at 17.] The pat-down search took less than one minute and Officer Highlen did not participate in the search. [Filing No. 52-1 at 18.] During this time, Ms. Franklin's hands were cuffed behind her back and she was wearing her scrubs from work. [Filing No. 52-1 at 17; Filing No. 52-1 at 18.] The pants to Ms. Franklin's scrubs were falling down and she requested help pulling them back up several times, but was not given any help. [Filing No. 52-1 at 18.]

Throughout her interactions with Deputy Hammons and Officer Highlen, Ms. Franklin was agitated and she "yelled out" that if the officers "could hurry up, it would be nice" because she

was "really, really cold and it was freezing." [Filing No. 52-1 at 15.] She "might have said a word or two" of profanity because she was "very frustrated." [Filing No. 52-1 at 15.]

Ms. Franklin got into Deputy Hammons' squad car and was transported to jail, during which time she complained about being nauseated, complained about her arm "nonstop," and asked to be taken to the emergency room. [Filing No. 52-1 at 18; Filing No. 52-1 at 19.]

Once she arrived at the jail, Ms. Franklin requested a menstrual pad but was never provided with one. [Filing No. 52-1 at 20.] She also continued requesting medical attention for her arm but was not provided with any. [Filing No. 52-1 at 20.]

On April 13, 2016, a few days after her release from jail, Ms. Franklin went to Ball Memorial Hospital for an X-ray. [Filing No. 52-1 at 24.] The Hospital referred her to an orthopedic specialist, who recommended that she wear a sling and soft cast and attend physical therapy. [Filing No. 52-1 at 24; Filing No. 52-1 at 26.] Ms. Franklin's arm was not fractured. [Filing No. 52-1 at 35.]

On May 10 and 11, 2016, Ms. Franklin visited the Center for Psychological Development and met with a psychologist. [Filing No. 52-1 at 27.] From May 11 through May 17, 2016, Ms. Franklin was admitted to the St. Vincent Stress Center. [Filing No. 52-1 at 28.]

On September 21, 2016, counsel for the Franklins sent a Notice of Tort Claim to the Randolph County Commissioners, the Mayor of Winchester, the Randolph County Sheriff, and the Winchester Police Department. [Filing No. 53-1 at 1.] The Notice of Tort Claim stated that Ms. Franklin believed that the officers involved in her traffic stop were Jerry Hammons of the Randolph County Sheriff Department, and Austin Highlen of the Winchester City Police. [Filing No. 53-1 at 2.] Further, the Notice provided as follows:

> That the officers were employees of the Defendants, and each of them, and were acting within the scope of their employment.
>
> Mrs. Franklin and her husband believe that the officers were careless and negligent and used excessive force which was not warranted in the instance described above, violated her civil rights, and caused her physical, emotional, and mental injuries as a result of their unwarranted actions.

[Filing No. 53-1 at 2.]

On April 9, 2018, the Franklins filed suit against the City of Winchester, the Randolph County Commissioners, (the "Commissioners"), and the Randolph County Sheriff Department, (the "Department"), in the Randolph Circuit Court. [Filing No. 1-1 at 2.] On May 2, 2018, the Commissioners and the Department removed the case to this Court on the basis of federal question jurisdiction. [Filing No. 1 at 1.] On July 9, 2018, the Franklins sought leave to file an amended complaint in this matter, [Filing No. 22], which was granted on August 2, 2018, [Filing No. 26]. The Franklins' Amended Complaint added Deputy Hammons and Officer Highlen as defendants in the matter. [Filing No. 22-1.]

In their Amended Complaint, the Franklins allege that:

- the actions of Deputy Hammons and Officer Highlen constitute a "Monell § 1983 violation of the Civil Rights Act for which Randolph County Commissioners and the City of Winchester, Indiana are liable," [Filing No. 22-1 at 3];

- the officers "were careless and negligent and used excessive force" against Ms. Franklin and "violated her civil rights and caused her physical, emotional, and mental injuries as a result of their unwarranted actions," [Filing No. 22-1 at 4]; and

- "[a]s a direct and proximate result of the carelessness and negligence of the Defendants," William Franklin "lost the services and consortium of his wife," and "will continue to incur such damages in the future," [Filing No. 22-1 at 4].

The Winchester Defendants moved for summary judgment, and that Motion is now fully briefed and ripe for the Court's review. [Filing No. 51.] In addition, the Randolph County Defendants filed a Motion to Dismiss/Motion for Summary Judgment, which is also ripe for the Court's review. [Filing No. 59].

### III.
#### DISCUSSION

In order to rule on the Motions filed by the Winchester Defendants and the Randolph County Defendants, the Court first considers the Franklins' federal claims, beginning with claims that the Franklins withdrew in response to the pending Motions. Next, the Court considers claims that the Franklins failed to address in their response briefs. The Court then jointly considers the Franklins' claims against Officer Highlen and Deputy Hammons.

The Court then turns to the Franklins' state law claims, and separately considers their claims against the City of Winchester, the Commissioners, and the Department. Lastly, the Court considers Mr. Franklin's loss of consortium claims.

**A. The Franklins' Federal Claims**

*1. The Franklins' Withdrawn Claims*

In response to the Winchester Defendants' Motion for Summary Judgment, the Franklins withdrew their false arrest claim and their *Monell* § 1983 Civil Rights claim. [Filing No. 53 at n.1.] Both issues had been fully briefed in the Winchester Defendants' brief in support of summary judgment prior to the Franklins withdrawing their claims. [Filing No. 52 at 11-13 (the Winchester Defendants' arguments concerning the Franklins' false arrest claim); Filing No. 52 at 17 (the Winchester Defendants' arguments concerning the Franklins' *Monell* claim).] Upon withdrawing their false arrest and *Monell* § 1983 claims with respect to the Winchester Defendants, the Franklins state that they "agree" that such claims "should be dismissed." [Filing No. 53 at 13.]

Similarly, in response to the Randolph County Defendants' Motion, the Franklins clarified that they had withdrawn their false arrest and *Monell* § 1983 Civil Rights claims as to the Randolph County Defendants as well. [Filing No. 62 at 5.] Both issues had already been fully briefed by the Randolph County Defendants. [Filing No. 61 at 8 (the Randolph County Defendants' arguing that "there is no such thing as a '*Monell* § 1983 violation'"); Filing No. 61 at 13 (arguing that "[b]ecause Plaintiffs do not have any evidence upon which a reasonable jury could find in their favor, their *Monell* claim must be dismissed pursuant to Fed. R. Civ. P. 56"); Filing No. 61 at 17-18 (the Randolph County Defendants' arguments concerning the Franklins' false arrest claim).]

Allowing a plaintiff to withdraw claims at the end of discovery and while a defendant's motion for summary judgment is pending "runs counter to the purpose of summary judgment and would unfairly prejudice [d]efendant." *Frerck v. John Wiley & Sons, Inc.*, 2014 WL 3512991, at *9 n.10 (N.D. Ill. July 14, 2014); *see also Stewart v. Rouse*, 1999 WL 102774, at *9 (N.D. Ill. Feb. 22, 1999) (granting summary judgment on claims that were withdrawn in response to a Motion for Summary Judgment). As such, the Court finds that the Winchester Defendants and the Randolph County Defendants are entitled to summary judgment on the claims that the Franklins attempted to withdraw in their response briefs. The Winchester Defendants' Motion for Summary Judgment is therefore **GRANTED** as to all false arrest and *Monell* claims, and the Randolph County Defendants' Motion for Summary Judgment is **GRANTED** as to the same.

### 2. *The Franklins' Abandoned Claims*

In their Motion for Summary Judgment, the Winchester Defendants argue that, to the extent the Franklins have not abandoned their negligent supervision/training claim, the claim fails. [Filing No. 52 at 16.] In their response brief, the Franklins do not address negligent supervision or training. As such, the Court deems such claims abandoned. *See Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir. 2003) (holding that where a party "failed to delineate his negligence claim

in his district court brief in opposition to summary judgment . . . , his negligence claim is deemed abandoned"). The Winchester Defendants' Motion for Summary Judgment is therefore **GRANTED** as to any negligent supervision/training claims.

### 3. *The Franklins' Claims Against Officer Highlen and Deputy Hammons*

Both Officer Highlen and Deputy Hammons argue that the applicable statute of limitations bars the Franklins' claims against them. [Filing No. 52 at 5; Filing No. 61 at 13.] The Court will set forth the arguments in support of and in opposition to the Winchester Defendants' Motion for Summary Judgment as they relate to the Franklins' claims against Officer Highlen, then set forth the various arguments concerning the Randolph County Defendants' Motion for Summary Judgment as they relate to the Franklins' claims against Deputy Hammons. The Court will then jointly analyze the merits of these related arguments.

#### i. Officer Highlen's Motion for Summary Judgment

Officer Highlen argues that Indiana's two-year statute of limitations for personal injury actions determines the statute of limitations for the Franklins' § 1983 claims and ran on April 9, 2018 – two months before the Franklins sought leave to add him as a defendant. [Filing No. 52 at 6.] Moreover, Officer Highlen argues that the Franklins' claims against him do not relate back to the date of the original complaint pursuant to Fed. R. Civ. P. 15(c)(1) and that a lack of knowledge about the proper defendant is not a mistake that allows relation back. [Filing No. 52 at 7.]

In response, the Franklins contends that "Officer Highlen's contention that the statute of limitation bars [their] claim against him is without merit." [Filing No. 53 at 7.] The Franklins acknowledge that Ms. Franklin's arrest occurred on April 9, 2016 and they sought to amend their Complaint to name Officer Highlen as a Defendant on July 9, 2018, but they argue that the amended pleading relates back to the original. [Filing No. 53 at 5.] The Franklins argue that the relevant consideration under Rule 15(c)(1) is whether the party being sued "received such notice

of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." [Filing No. 53 at 5.] In this instance, the Franklins contend that "[f]rom the time the Tort Claims Notice was filed on September 21, 2016," Officer Highlen was aware that he was "the focus of the Franklins' claim," and therefore, "knew or should have known that an action would be brought against [him], but for mistake" concerning the proper party's identity. [Filing No. 53 at 6-7.]

In his reply brief, Officer Highlen contends that the authority upon which the Franklins rely does not support their position. [Filing No. 57 at 3.] Specifically, he argues that the deliberate decision to sue one party over another is not a "mistake" under Rule 15(c)(1) and that "[h]ere, it is abundantly clear that [the] Franklin[s] did not make a mistake regarding Officer Highlen's identity, and instead simply chose for unknown reasons to not sue Officer Highlen in [the] initial Complaint." [Filing No. 57 at 4.] Officer Highlen additionally points out that the Notice of Tort Claim "confirms and puts beyond dispute" that the Franklins' decision to not name Officer Highlen as a defendant in the initial Complaint "was not a 'mistake' for purposes of Rule 15." [Filing No. 57 at 5.]

ii. Deputy Hammons' Motion for Summary Judgment

Similarly, Deputy Hammons argues that the Franklins' claims against him are time-barred by Indiana's two-year statute of limitations. [Filing No. 61 at 13.] Deputy Hammons contends that by the time the Franklins "asked the Court to allow them to add [Deputy] Hammons to the lawsuit as an additional defendant, more than two years had already transpired" since the date of Deputy Hammons' alleged misconduct. [Filing No. 61 at 14.] Deputy Hammons further contends that the Franklins' "belated claims" against him do not relate back to the original complaint and "do not satisfy the requirements of Fed. R. Civ. P. 15(c)(1)(C) because Plaintiffs did not make a

mistake concerning his identity." [Filing No. 61 at 15.] Additionally, Deputy Hammons argues that Ms. Franklin's Notice of Tort Claim "affirmatively establishes" that the Franklins knew his identity "including both his first and last name, by September 21, 2016, which was a full 565 days before the applicable limitation period was to expire on April 9, 2018." [Filing No. 61 at 16.] Deputy Hammons argues that the fact that the Franklins did not sue him "within the applicable limitation period can only be explained as: (1) a deliberate decision not to sue him; or (2) a negligent omission," and "[e]ither way, the claims that they have belatedly asserted against him do not relate back to the date of their original complaint." [Filing No. 61 at 16.]

In their response brief, the Franklins again contend that "the only two inquiries that the district court is now permitted to make in deciding whether an amended complaint relates back to the original one" is "first whether the defendant who sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead of or in addition to suing the named defendant; and second, whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself." [Filing No. 62 at 11-12.] The Franklins argue that from "the time the Tort Claims Notice was filed on September 21, 2016," Deputy Hammons "knew or should have known that an action would be brought against him, but for mistake concerning their proper parties identity." (sic) [Filing No. 62 at 12.]

In his reply brief, Deputy Hammons argues that the Franklins' claims against him do not relate back to their original complaint because: (1) the Franklins "have designated no evidence to establish" that he "received a copy of their Notice of Tort Claim or knew about it"; (2) the Franklins "did not make a mistake about his identity"; and (3) it is not Deputy "Hammons'[] burden to

demonstrate that he would be prejudiced if he is required to defend against [the Franklins'] claims on the merits." [Filing No. 64 at 3-4.]

       iii. Whether the Statute of Limitations bars the Franklins' claims against Officer Highlen and Deputy Hammons

As all parties acknowledge, "[a] court entertaining an action under § 1983 . . . must apply the forum state's general statute of limitations for personal-injury suits," which, in Indiana, is a two-year statute of limitations. *Bebout v. Thomas*, 409 F. App'x 27, 28-29 (7th Cir. 2011) (citing Ind. Code § 34–11–2–4). All parties also appear to agree that the only way that the Franklins' claims against Officer Highlen and Deputy Hammons fall inside the two-year statute of limitations is if the "amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). The requirements for relation-back are set forth in Federal Rule of Civil Procedure 15(c)(1)(C), which provides as follows:

> An amendment to a pleading relates back to the date of the original pleading when . . . the amendment changes the party or the naming of the party against whom a claim is asserted . . . [and] the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Much of the ink spilled in this case relates to the effect of the United States Supreme Court's 2010 decision in *Krupski*, which upended the way many courts had been interpreting the "mistake" provision of Rule 15. *Krupski* held that under Rule 15, Courts must ask "what the prospective *defendant* knew or should have known . . . , not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski*, 560 U.S. at 548 (emphasis in original). The Franklins, for example, insist that under *Krupski*, their 2016 tort claims notice – which they contend identified both Officer Highlen and Deputy Hammons by name – proves that

the two officers knew or should have known that the Franklins intended to bring a claim against them, but for a mistake. [Filing No. 53 at 7; Filing No. 62 at 12.]

*Krupski* involved a plaintiff who "tripped over a cable and fractured her femur while she was on board the cruise ship Costa Magica." *Id*. at 541. The plaintiff filed suit against Costa Cruise Lines, which informed the plaintiff after the limitations period had run that Costa Crociere was the proper defendant. *Id*. at 543. Both the District Court and the Court of Appeals held that the plaintiff's complaint did not relate back to her original complaint, and the Supreme Court reversed, holding that the Court of Appeals had focused on the plaintiff's knowledge, when it should have analyzed "whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error." *Id*. at 548. The Supreme Court held that Costa Crociere "should have known . . . that it was not named as a defendant in [the original] complaint only because of [the plaintiff's] misunderstanding about which 'Costa' entity was in charge of the ship," which was "clearly a mistake concerning the proper party's identity." *Id*. at 554-55.

In conducting its analysis, the Supreme Court explained that the problem that gave rise to the passage of Rule 15 was social security suits against the Federal Government in which individuals often failed to name the appropriate agency Secretary "and named instead the United States; the Department of Health, Education, and Welfare itself; the nonexistent 'Federal Security Administration'; or a Secretary who had recently retired from office." *Id*. at 550-51. The Court stated that a focus on what a prospective defendant knew or should have known was consistent with the history of Rule 15(c)(1)(C).

The question before the Court in light of *Krupski* is whether Officer Highlen and Deputy Hammons should have known that the Franklins' failure to name them in the original complaint was a mistake. On this point, the Court notes that the facts of this case are significantly

distinguishable from those of *Krupski*, where the names of the original defendant and the added defendant were "very similar," where the two entities were "related corporate entities," and where the text on the cruise ship ticket failed to clarify the differences between the entities. *Id*. at 556-57. Similarly, the facts of this case are distinguishable from the types of suits that gave rise to Rule 15, where individuals named the wrong agency secretary or the wrong agency as defendants.

The Court is aware that under *Krupski*, "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Id*. at 548. The record in this case demonstrates that information in the Franklins' possession – specifically, the names of Officer Highlen and Deputy Hammons and their respective roles in Ms. Franklin's arrest – bears on the officers' understanding of whether the Franklins made a mistake regarding the proper parties' identities. Accordingly, such information may be considered by this Court under *Krupski*. By the Franklins' own admission, the two officers knew at the time the tort claim was filed that the Franklins knew their identities and knew of their respective roles in the arrest. As such, the Court concludes that there is no reason why the two officers should have known that a mistake "concerning the proper party's identity" under Rule 15 had occurred. Instead, the existence of the tort claim supports the opposite conclusion. By seeing that the Franklins knew their identities and knew of their respective roles in the arrest, the two officers would have understood the Franklins to have made "a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties." *Id*. at 549. Such a choice, the *Krupski* Court stated, is "the antithesis of making a mistake concerning the proper party's identity." *Id*.

Accordingly, the Court finds that the Franklins' amended complaint does not relate back to their originally-filed complaint under Rule 15(c)(1)(C). As such, the Franklins' claims against

both Officer Highlen and Deputy Hammons are barred by the applicable statute of limitations and the Winchester Defendants' Motion for Summary Judgment is therefore **GRANTED** as to all claims against Officer Highlen and the Randolph Country Defendants' Motion for Summary Judgment is **GRANTED** as to all claims against Deputy Hammons.[1]

### B. Remaining State Law Claims

Before proceeding to consider the arguments related to the Franklins' remaining state law claims against Defendants, the Court must consider whether to retain supplemental jurisdiction over such claims.

28 U.S.C.A. § 1367(c)(3) provides that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." The Seventh Circuit has recently observed that "there is a general presumption that the court will relinquish supplemental jurisdiction and dismiss the state-law claims without prejudice." *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) (citing *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479-80 (7th Cir. 2012)). "The

---

[1] Officer Highlen and Deputy Hammons each raise numerous other arguments as to why they are entitled to summary judgment. [*See* Filing No. 52 at 8 (arguing that Officer Highlen did not use excessive force by merely pointing a taser at Ms. Franklin); Filing No. 52 at 9 (arguing that Officer Highlen is protected by qualified immunity on the excessive force claim because there was no violation of any clearly established right); Filing No. 52 at 11 (arguing that Officer Highlen is entitled to summary judgment on any false arrest claim because Ms. Franklin did not properly plead such a claim); Filing No. 52 at 11 (arguing that any false arrest claim against Officer Highlen fails because there was probable cause to arrest Ms. Franklin); Filing No. 52 at 13 (arguing that Officer Highlen is protected by qualified immunity on the false arrest claim because it was not unreasonable for him to believe that Ms. Franklin had committed battery); Filing No. 52 at 14 (arguing that Officer Highlen is personally immune from liability on any of the state law claims because he acted within the scope of his employment); Filing No. 61 at 17 (arguing that the Franklins' claims against Deputy Hammons should be dismissed pursuant to Indiana law).] Given that Officer Highlen and Deputy Hammons are entitled to Summary Judgment because the statute of limitations has run on the Franklins' claims against them, the Court will not consider either officer's additional arguments.

presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ*, 672 F.3d at 479 (citations and quotations omitted). Further, the Seventh Circuit has identified circumstances that may displace the presumption, namely:

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id*. at 480 (citations and quotations omitted).

The first factor is not at issue in this case because "Indiana's savings statute, Ind.Code § 34–11–8–1, and the tolling provision of 28 U.S.C. § 1367(d) foreclose any concerns related to the statute of limitations," which, in any case, "are less relevant when the court remands a case . . . as opposed to dismissing it." *Plaats v. City of Lafayette*, 2015 WL 5773724, at *4 (N.D. Ind. Sept. 30, 2015), *aff'd sub nom. Plaats v. Barthelemy*, 641 F. App'x 624 (7th Cir. 2016); *see also Wozniak v. Ind. Univ. Bd. of Trustees*, 2007 WL 869165, at *7 (S.D. Ind. Mar. 20, 2007) (stating that the "first factor is not here, or even normally, a concern because the Indiana 'journeys account statute,' Ind.Code § 34-11-8-1, generally gives plaintiffs three years to refile claims not dismissed adversely or because of the plaintiff's negligence in prosecuting"). However, the second and third factors vary for each of the remaining three Defendants.

As set forth below, several of the Franklins' claims can be dispensed with clearly and quickly based on the arguments set forth in the briefing. As such, the Court sees fit to retain jurisdiction under both the second and third prongs of the test set forth in *RJW* over the Franklins' state law claims against the City of Winchester and against the Commissioners. By contrast, for the reasons set forth below, the Court declines to exercise supplemental jurisdiction over the

Franklins' state law claims against the Department and remands such claims to the Randolph Circuit Court for resolution.

### 1. *The Franklins' State Law Claims Against the City of Winchester*

In support of its Motion for Summary Judgment the City of Winchester argues that the Indiana Tort Claims Act's law enforcement immunity provides immunity to it because Officer Highlen was acting in the scope of his employment, and therefore his immunity extends to the city as a governmental entity. [Filing No. 52 at 15-16 (citing *Mangold ex rel. Mangold v. Dep't of Natural Res.*, 756 N.E.2d 970, 975 (Ind. 2001))].

In response, the Franklins argue that law enforcement immunity does not preclude their claims against the City of Winchester because the ITCA does not protect against excessive force claims or sexual assault claims and Officer Highlen's failure to intervene qualifies as excessive force and sexual assault. [Filing No. 53 at 12.] In short, the Franklins argue that the issue in this case "is whether the lack of protection for excessive force claims under the ITCA Immunity Provision encompasses an officer's failure to intervene to prevent a fellow officer from engaging in excessive force." [Filing No. 53 at 12.]

In its reply brief, the City of Winchester argues that the Franklins improperly raised their failure to intervene claim for the first time in their response in opposition to summary judgment. [Filing No. 57 at 6.] Even if the failure to intervene claim had been properly raised, the City of Winchester argues that it fails as to excessive force because: (1) "it is well-established that the mere presence at the scene of a display of excessive force is insufficient to show a failure to intervene," (2) the evidence in this case shows that the act of handcuffing Ms. Franklin lasted no more than a few seconds – not enough time to intervene, and (3) the fact that Deputy Hammons "handcuffed Franklin and used some degree of force to do so should not have alerted Officer Highlen of any constitutional violation or the need to intervene." [Filing No. 57 at 8-11.] In

addition, Winchester argues that "[a]ny claim respecting the pat-down search fails because cross-gender pat-down searches are not unreasonable under the Fourth Amendment," and, in any case, "the evidence does not show that Officer Highlen had a reasonable opportunity to intervene in the pat-down search." [Filing No. 57 at 12-13.]

In order to frame the Court's discussion on this issue, a preliminary reminder is helpful: as set forth above, the Franklins have withdrawn their *Monell* claims in this matter, [Filing No. 53 at n.1; Filing No. 62 at 5], and, as such, the only claims remaining against the City of Winchester are state law claims brought under Indiana law.

In arguing that it is entitled to summary judgment on such claims, the City of Winchester invokes the ITCA, which provides that a "governmental entity" "is not liable if a loss results from the . . . adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations)." Ind. Code Ann. § 34-13-3-3(8). The language of the ITCA specifically exempts from its coverage false arrest and false imprisonment claims – neither of which is at issue here. Other exemptions to the ITCA's law enforcement immunity were developed through caselaw.

Relevant here is the Indiana Supreme Court's 2010 decision holding that "the law enforcement immunity of the [ITCA] does not shield the government from liability for excessive force by police." Wilson v. Isaacs, 929 N.E.2d 200, 204 (Ind. 2010). The *Wilson* court explained that the Indiana statute governing law enforcement officers' use of force relating to an arrest provides that a "law enforcement officer is justified in using reasonable force if the officer reasonably believes that the force is necessary to effect a lawful arrest." Ind. Code § 35-41-3-3(b). Accordingly, if an officer does use "unnecessary or excessive force, the officer may commit the torts of assault and battery." Wilson, 929 N.E.2d at 203. The Indiana Supreme Court therefore concluded that § 35-41-3-3(b) is a "statutory provision" that restrains the ITCA's "statutory

immunity from erecting a shield to liability for conduct contrary to the statute." *Id.* at 203-04 (citing Ind. Code § 35–41–3–3(b)). Put simply, the ITCA provides no immunity for excessive force claims.

But the Franklins' argument with regard to the Winchester Defendants is a step beyond *Wilson* because, as the Franklins acknowledge, their claims against Officer Highlen (and therefore against the City of Winchester) are premised, not on excessive force, but "upon his failure to intervene." [Filing No. 53 at 2.] The Franklins argue without citation to any authority "that an officer's failure to intervene to prevent a fellow officer from using excessive force is encompassed within the area of excessive force by police." [Filing No. 53 at 12.] As it relates to federal claims, the Franklins are correct. It is well settled that "in a section 1983 action alleging that police violated the plaintiff's Fourth Amendment rights by subjecting [her] to excessive force, a defendant police officer may be held to account both for his own use of excessive force on the plaintiff, as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." *Sanchez v. City of Chicago*, 700 F.3d 919, 925-26 (7th Cir. 2012) (citations omitted). But the remaining claims against the City of Winchester are not based on § 1983, they are based on Indiana law. The Franklins have not identified any statute or case recognizing a cause of action under Indiana law for the failure to intervene to stop excessive force, and the Court's independent research has not revealed any such authority. As such, the Court finds that Indiana law does not provide for a cause of action for an officer's failure to intervene to stop excessive force, and the City of Winchester is therefore entitled to summary judgment on the Franklins' state law claims against it.[2]

---

[2] The Court notes that the Franklins' additional argument on this point – that Officer Highlen's failure to intervene resulted in a sexual assault claim that is also outside of the scope of the ITCA's immunity – is without merit. First, the Franklins cite an Indiana Court of Appeals case that they

As a final matter, the Court notes that even if Indiana law did provide for a cause of action for an officer's failure to intervene to stop excessive force, the Franklins acknowledge an additional hurdle – the issue of "whether the lack of protection for excessive force claims under the ITCA Immunity Provision encompasses an officer's failure to intervene to prevent a fellow officer from engaging in excessive force" "has not yet been addressed by the Indiana courts." [Filing No. 53 at 12.] Sitting in diversity jurisdiction, this Court's duty "is to decide issues of Indiana state law" by predicting how "the Indiana Supreme Court would decide them today." *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). In undertaking this task, the Court must be mindful of the Seventh Circuit's guidance in dealing with state law:

> Federal courts are loathe to fiddle around with state law. Though district courts may try to determine how the state courts would rule on an unclear area of state law, district courts are encouraged to dismiss actions based on novel state law claims. When confronted with a state law question that could go either way, the federal

---

contend stands for the proposition that "it is not only excessive force by police that falls outside the shield of the Indiana Tort Claims Act, but other state law negligence claims do as well, such as sexual assault." [Filing No. 53 at 12.] Second, without pointing to any authority, the Franklins contend that Officer Highlen's failure to intervene resulted in sexual assault for which the City of Winchester is liable. [Filing No. 53 at 13.]

The Franklins' first point is undercut by their citation to an Indiana Court of Appeals case that (1) does not mention or cite the ITCA; (2) does not hold that an officer acts outside the scope of his employment when he commits sexual assault, but rather finds that it "is a question of fact for a jury;" and (3) was vacated by the Indiana Supreme Court in September 2018, well before the Franklins filed their brief in this matter. [Filing No. 53 at 12 (citing *Cox v. Evansville Police Dep't*, 84 N.E.3d 678 (Ind. Ct. App. 2017), vacated, 107 N.E.3d 453 (Ind. 2018), and transfer granted, opinion vacated sub nom. *Cox v. City of Evansville*, 111 N.E.3d 196 (Ind. 2018)).] In short, the cited authority does not support a conclusion that sexual assault falls outside of the ITCA's immunity.

But even assuming *arguendo* that it did, the City of Winchester would still be entitled to summary judgment on this point because, as was the case with their arguments concerning the failure to intervene to stop excessive force, the Franklins have failed to identify any authority showing that Indiana law provides for a cause of action for an officer's failure to intervene to stop sexual assault in the first place. Therefore, the Franklins' additional arguments regarding sexual assault do not save their state law claims against the City of Winchester, and the City is entitled to summary judgment.

courts usually choose the narrower interpretation that restricts liability. Innovative state law claims should be brought in state court.

*Insolia v. Philip Morris Inc.* 216 F.3d 596, 607 (7th Cir. 2000); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 (7th Cir. 2007) (same).  Therefore, even if Indiana law provided for a cause of action for an officer's failure to intervene to stop excessive force – which it does not – this Court would not be the appropriate tribunal to determine whether such an action would qualify as an excessive force claim for the purposes of determining the scope of the ITCA.

For the reasons set forth herein, the Winchester Defendants' Motion for Summary Judgment is **GRANTED** as to the Franklins' claims against the City of Winchester.

### 2. *The Franklins' State Law Claims Against the Randolph County Commissioners*

With respect to the Franklins' claims against the Commissioners, the Randolph County Defendants argue that it "is legally impossible that the Commissioners could have liability to [the Franklins] under Indiana law" because the Commissioners have immunity from liability under the ITCA due to the fact that Deputy Hammons "was not the Commissioners' employee."  [Filing No. 61 at 10.]

In response, the Franklins concede "that county sheriffs occupy a constitutionally created office that is separate from the county executive" and "that county commissioners do not have control over the acts of a sheriff" but they nonetheless contend "that a court needs to make this determination."  [Filing No. 62 at 7.]

In their reply brief, the Randolph County Defendants argue that there is "no genuine issue of material fact about who employed [Deputy] Hammons" and that the Franklins "pleaded, and the defendants admitted, that [Deputy] Hammons was employed by the Sheriff and not the Commissioners."  [Filing No. 64 at 2.]

It is well established that "it is not the province of the courts to complete litigants' thoughts for them," *White Eagle Co-op. Ass'n v. Conner*, 553 F.3d 467, 476 n.6 (7th Cir. 2009), yet that is precisely what the Franklins ask of this Court by presenting an argument that is, at best, undeveloped and unsupported, and at worst, conceded. *See also Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 297 (7th Cir. 2018) (stating that it is the plaintiff's "responsibility in opposing summary judgment to identify the evidence that would sufficiently raise a disputed issue for trial," and that "[a]bsent such evidence" that plaintiff has waived such an argument). Rather than support their argument that they have a state law claim against the Commissioners, the Franklins do the opposite and cite *Hamman v. Starke Cty., Ind.*, 2019 WL 1438294, at *3 (N.D. Ind. Apr. 1, 2019), in which the district court for the Northern District of Indiana concluded that a sheriff's department rather than a county was the more appropriate defendant in a wrongful death action involving law enforcement. [Filing No. 62 at 7 ("Arguably, the instant case is analogist (sic) to *Hamman v. Starke County, Indiana, et al.*").] Despite the Franklins' assertion that "it is evident that a court needs to make" the determination as to who employed Deputy Hammons, the Court declines to "step[] outside the proper judicial role in an adversarial system," *Luddington v. Ind. Bell Tel. Co.*, 966 F.2d 225, 230 (7th Cir. 1992), and make the Franklins' arguments for them. Accordingly, the Randolph County Defendants' Motion for Summary Judgment is **GRANTED** as to the Franklins' claims against the Commissioners.[3]

---

[3] Even if the Franklins had attempted to set forth arguments in support of their claims against the Commissioners, it would have been for naught, as ample case law supports the conclusion that the Commissioners cannot be held liable for the acts of Deputy Hammons. *See Estate of Drayton v. Nelson*, 53 F.3d 165, 167-68 (7th Cir. 1994) (holding that in Indiana, a county "has no authority over the Sheriff and his [or her] deputies," and that because "there is no doubt at all about the relation between the County and the Sheriff, the naming of the County was not only a mistake; it was a mistake that no competent lawyer should have made"); *Frazee v. Dearborn Cty. Sheriff's Dep't*, 2017 WL 4650874, at *10 (S.D. Ind. Oct. 17, 2017) (quotations omitted) ("County commissioners do not have any control over the acts of the sheriff and its officers and are never

### 3. *The Franklins' State Law Claims Against the Randolph County Sheriff Department*

With respect to the Franklins' claims against the Department, the Randolph County Defendants argue that "it is not a suable entity," [Filing No. 61 at 11], and, even if it were, it would be immune from suit under the provision of the ITCA that "immunizes governmental entities from liability arising out of the enforcement of a law." [Filing No. 61 at 13.] More specifically, the Randolph County Defendants argue that because Deputy Hammons "was attempting to enforce the law when he encountered [Ms. Franklin] on April 8, 2016, . . . the Department is immunized from [the Franklins'] negligence claims." [Filing No. 61 at 13.] Further, the Randolph County Defendants argue that "if the Court finds that . . . a state law battery claim survives as to one or more of the Randolph County Defendants, then [Ms. Franklin's] state law battery claim should be remanded to state court." [Filing No. 61 at 20 (citing *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008)).]

In response, the Franklins contend that their suing the Department instead of the Sheriff is "merely a matter of semantics and therefore, naming the Sheriff in his official capacity is the same thing as bringing a suit against the Sheriff's Department." [Filing No. 62 at 9.] Further, the Franklins argue that they have "placed into evidence excessive force allegations against Deputy Hammons in the course of his employment with the Randolph County Sheriff," which "are not protected by the Indiana Tort Claims Act." [Filing No. 62 at 9.] Lastly, the Franklins argue that the actions of Deputy Hammons "in proceeding with a pat down search for a traffic violation"

---

vicariously liable for their torts"); *Unger v. Blevins-Foster*, 2013 WL 2456073, at *5-6 (S.D. Ind. June 6, 2013) ("There is simply no basis to impute liability to [the] County for any acts or omissions by [the] Sheriff . . . or his deputies"); *Burton v. Lacy*, 2008 WL 187552, at *5 (S.D. Ind. Jan. 18, 2008) ("in Indiana the County is not the proper defendant"); *Delk v. Bd. of Comm'rs of Delaware Cty.*, 503 N.E.2d 436, 440 (Ind. Ct. App. 1987) ("The county commissioners, and, accordingly, the county, does not have any control over the acts of the sheriff. The sheriff is an office created by Article 6, § 2 of the Indiana Constitution and the powers and duties of the office are established by the Legislature").

despite Ms. Franklin's request for "a female officer to conduct the pat down and proceeding with the pat down while telling her that he was a police officer and he could touch her [wherever] he wanted, rise to the level of a sexual assault," also "fall[s] outside the shield of the Indiana Tort Claims Act." [Filing No. 62 at 9-10.] The Franklins do not address the Randolph County Defendants' contention that the remaining state law claims should be remanded to state court for resolution.

In their reply brief, the Randolph County Defendants reiterate their argument that if the Court determines that the Franklins have properly pleaded a state law battery claim based on excessive force and "*if* it decides that said claim can go forward" against the Department, "then that claim is the only claim that survives summary judgment, and that single claim should be remanded to state court." [Filing No. 64 at 1.]

Unlike the Franklins' state law claims against the City of Winchester and the Commissioner, the Franklins' state law claims against the Department are significantly less straightforward. Turning again to the three factors set forth by the Seventh Circuit in *RWJ*, all three factors weigh in favor of remand. 672 F.3d at 480 (identifying the following circumstances that may displace the presumption in favor of remand: "(1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided"). First, the statute of limitations has not run on the Franklins' claims against the Department. Second, although some resources have been expended on this case, very little time has been spent on the Franklins' state law claims against the Department. Lastly, and most critically, it is not clear how the pendent claims will be resolved, as they are hotly contested by the

parties and will require legal analysis on state law issues and possibly fact-sensitive inquiries by a jury. Because none of the three factors overcome the presumption in favor of relinquishing supplemental jurisdiction over the remaining state law claims, the Franklins' state law claims against the Department will be remanded.

> ### 4. *Mr. Franklin's Loss of Consortium Claims against the Winchester Defendants and the Randolph County Defendants*

The only issue remaining for the Court's consideration is that of Mr. Franklin's loss of consortium claims and, on this issue, the Court need not belabor the point. The Winchester County Defendants correctly argue that "Mr. Franklin's claim fails because his wife's claim fails." [Filing No. 52 at 18.] Under Indiana law loss of consortium claims "are derivative from the spouse's underlying claim, in that, if the underlying claim cannot be proven, then the loss of consortium claim fails." *Hedden v. CBS Corp.*, 2015 WL 5775570, at *17 (S.D. Ind. Sept. 30, 2015) (citing *Remmers v. Remington Hotel Corp.*, 56 F.Supp.2d 1046, 1058 (S.D. Ind. 1999)). Therefore, the Winchester County Defendants' Motion for Summary Judgment is **GRANTED** as to Mr. Franklin's loss of consortium claim.

As for Mr. Franklin's loss of consortium claims against the Randolph County Defendants, his claim against the Commissioners fails for the same reason noted above - because the Franklins' underlying claims against the Commissioners do not survive summary judgment. Therefore, the Randolph County Defendants' Motion for Summary Judgment is **GRANTED** as to Mr. Franklin's loss of consortium claim against the Commissioners.

By the same logic, Mr. Franklin's loss of consortium claim against the Department will be **REMANDED** to state court to be resolved alongside the Franklins' state law claims against the Department.

**IV.**

**CONCLUSION**

For the reasons described herein, the Court **GRANTS** the Winchester County Defendants' Motion for Summary Judgment, [51], in its entirety.

In addition, the Court **GRANTS IN PART** the Randolph County Defendants' Motion for Summary Judgment, [59], as to:

- all false arrest and *Monell* claims;

- any negligent supervision/training claims;

- all claims against Deputy Hammons;

- the Franklins' state law claims against the Randolph County Commissioners; and

- Mr. Franklin's loss of consortium claim against the Randolph County Commissioners.

The Court further relinquishes jurisdiction over and **REMANDS** the remaining state law claims to the Randolph Circuit Court for further proceedings:

- the Franklins' state law claims against the Randolph County Sheriff Department; and

- Mr. Franklin's loss of consortium claim against the Randolph County Sheriff Department.

Final Judgment shall enter accordingly.

Date: 7/11/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**